UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

CALVIN LEE BROWN,

        Plaintiff,

        v.                                  Case No. 20-cv-0206- bhl

KEVIN CARR, *et al.*,

        Defendants.

---

## ORDER

---

      Plaintiff Calvin Lee Brown, an inmate confined at the Prairie du Chien Correctional Institution, filed a *pro se* complaint under 42 U.S.C. §1983, alleging that the defendants violated his constitutional rights. This order resolves Brown's motion for leave to proceed without prepaying the filing fee and screens his amended complaint. It also denies his motion for an emergency injunction.

**MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING THE FILING FEE**

      The Prison Litigation Reform Act (PLRA) applies to this case because Brown was a prisoner when he filed his complaint. *See* 28 U.S.C. §1915(h). The PLRA allows the Court to give a prisoner plaintiff the ability to proceed with his case without prepaying the civil case filing fee. 28 U.S.C. §1915(a)(2). When funds exist, the prisoner must pay an initial partial filing fee. 28 U.S.C. §1915(b)(1). He must then pay the balance of the $350 filing fee over time, through deductions from his prisoner account. *Id.*

      On February 12, 2020, the Court ordered Brown to pay an initial partial filing fee of $32.05. (ECF No. 5.) Brown paid that fee on March 10, 2020. The Court will grant Brown's motion for leave to proceed without prepaying the filing fee. He must pay the remainder of the filing fee over time in the manner explained at the end of this order.

**SCREENING THE COMPLAINT**

Under the PLRA, the Court must screen complaints brought by prisoners seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The Court must dismiss a complaint if the prisoner raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b). In determining whether the complaint states a claim, the Court applies the same standard that applies to dismissals under Federal Rule of Civil Procedure 12(b)(6). *See Cesal v. Moats*, 851 F.3d 714, 720 (7th Cir. 2017) (citing *Booker-El v. Superintendent, Ind. State Prison*, 668 F.3d 896, 899 (7th Cir. 2012)).

To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under color of state law. *D.S. v. E. Porter Cty. Sch. Corp.*, 799 F.3d 793, 798 (7th Cir. 2015) (citing *Buchanan–Moore v. Cty. of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009)). The Court construes *pro se* complaints liberally. *Cesal*, 851 F.3d at 720 (citing *Perez v. Fenoglio*, 792 F.3d 768, 776 (7th Cir. 2015)).

**BACKGROUND ALLEGATIONS**

Brown purports to sue more than 20 defendants in his 13-page amended complaint. His allegations fall into three "categories": (1) allegations about the availability of bathrooms at Racine Correctional Institution (RCI), where he was previously confined; (2) allegations about his classification status and prison assignment, including some about retaliation; and (3) allegations concerning his access to the courts.[1] Ordinarily, the Court would ask a plaintiff with

---

[1] The Court notes that Brown cannot bring a claim that relates solely to his classification status or prison assignment. It is well-established that a prisoner has no protected liberty interest in being assigned a classification or housing

2

this type of complaint to choose which set of allegations he wants to pursue in this lawsuit and file an amended complaint that reflects his choice. But, for the reasons the Court will explain below, only one set of allegations—those concerning bathroom availability— even potentially state a claim. Rather than asking him to amend, the Court will allow him to proceed on that claim alone. Brown's allegations are assumed to be true at this stage and are summarized below.

On December 12, 2017, the bathroom on Brown's unit was unavailable and, because he had the urgent need to relieve himself due a "severe medical issue," he asked the unit officer to contact the desk officers at Racine's programs building, in which he was employed in the library, to obtain permission to use the restroom in that building. (Dkt. No. 6 at 9.) Defendants Jane/John Doe 1, Jane/John Doe 2, and Officer Aldana denied his request both initially and again when he asked upon arrival for work. After seeing another prisoner on his way to the restroom in the program building, Brown made a third request and it, too, was denied. These denials resulted in Brown urinating and defecating on himself. (*Id.*)

Brown then filed a complaint, which was forwarded to defendant Officer Serrano and defendant Warden Kemper to review the bathroom policy. (*Id.*) After waiting six months, presumably with no resolution, on June 20, 2018, Brown wrote a letter to Serrano, with a copy to Deputy Warden Johnson, complaining about the bathroom policy. Serrano called Brown to a meeting, during which Brown expressed his concerns with the bathroom policy, which he claims resulted in him soiling himself on "numerous occasions." (*Id.*) After seeing no changes, Brown filed an inmate complaint on June 28, 2018, but Defendant inmate complaint examiner Bones refused to accept his complaint, reasoning that Deputy Warden Johnson's office would be responding to his complaint. (*Id.* at 6–7.) On July 9, 2018, Brown received a letter from defendant Jason Wells that detailed and justified the institution's policy. (*Id.* at 7.) Brown responded on July 13 and explained why he believed the policy was unworkable. When he heard nothing from Wells, he submitted another complaint. Bones returned that complaint, too, explaining that Wells would be scheduling a meeting with him. Brown never heard from Wells

---

status. That is, prisoners do not have a constitutional right to be assigned to a particular prison, security classification, or housing assignment. *See Olim v. Wakinekona*, 461 U.S. 238, 245–46 (1983); *Meachum v. Fano*, 427 U.S. 215, 225 (1976); *Montanye v. Haymes*, 427 U.S. 236, 243 (1976). The Court will not summarize all the allegations related to his classification status and prison transfer because they cannot form the basis of a viable claim. However, the Court will include those allegations that relate to retaliation

3

and sent him another letter on September 28, 2018, detailing more incidents in which he had soiled himself and reiterating the inadequacy of the programs building bathroom policy.

In mid-November, Brown wrote directly to defendant Warden Kemper. (*Id.* at 8.) He explained that he was attempting to get the bathroom policy modified and that his complaints were being ignored. He told Kemper that another inmate had experienced an incident of soiling himself because of the policy. Brown then filed an inmate complaint on November 20, 2018, and Bones did not accept his complaint. He then complained about her actions to the corrections complaint examiner's office. (*Id.*)

Brown was leaving his job at the library to use the restroom on December 14, 2018, but he found that a key was broken off in the lock. (*Id.*) When he reported the problem to the desk officer, the officer told him to do the best he could. (*Id.* at 8–9.) Brown did not make it back to his cell before soiling himself. (*Id.* at 9.) He filed a complaint about this incident, too, and requested an additional bathroom be opened for inmate use. Bones responded that another inmate restroom would be opening in the near future. Brown appealed his complaint, and he alleges that Davidson and O'Donnell, whom the Court understands to be involved in the appeal process, should have intervened when they knew his rights were being violated. (*Id.*)

In February 2019, Brown was researching how to file a proper certiorari petition concerning his reclassification. (*Id.*) He was summoned to the librarian's office and shown a pornographic video she found on his account. He was then escorted to a room where he was interrogated by Lieutenant Launderville, who is not a named defendant. After the interrogation, he was told he was suspended from his library job and that he could not return to the library for several days. When he did return, the librarian informed him that defendant Officer Jones ordered that he had to pack up his materials and exit the library and not return until further notice. He protested because of his certiorari research. (*Id.*) Brown was allowed back in the library on March 13, 2019, but he alleges this was not enough time to prepare a certiorari petition acceptable to the court, resulting in his petition being dismissed as time barred in late April. (*Id.* at 9–10.)

In May 2019, Brown wrote to defendant Carr about the treatment he was receiving and his belief that officials were violating his constitutional rights. (*Id.* at 10.) He included documents and information, including his work evaluations. Defendant Hove responded on Carr's behalf, but his letter "addressed absolutely nothing." (*Id.* at 11.) That same month,

4

Brown filed a writ of certiorari challenging the single bathroom policy in Dane County Circuit Court. (*Id.* at 10.) Both Kemper and Carr were served, but before the complaint could be answered, defendants Carr, Hove, Kemper, Wells, Bones, Konitzer, Pawlak, Wiegand, Giernoth, and "unknown others" had Brown transferred from Racine to Prairie du Chien, a "much more oppressive" institution, mooting the writ. (*Id.*)

### A. Brown's Claims Concerning the RCI Bathroom Policy.

Brown complains that RCI's bathroom policy resulted in inhumane living conditions. To establish a constitutional violation with respect to prison living conditions, a plaintiff must allege: (1) the conditions were so adverse that they deprived him "of the minimal civilized measure of life's necessities" (the claim's objective prong) and (2) the defendant acted with deliberate indifference with respect to the conditions (the claim's subjective prong). *Townsend v. Fuchs*, 522 F.3d 765, 773 (7th Cir. 2008) (quoting *Farmer v. Brennan*, 511 U.S. 832, 834 (1994)). The necessities of life include "reasonably adequate ventilation, sanitation, bedding, hygienic materials, and utilities." *Gray*, 826 F.3d at 1005 (quoting *Lewis v. Lane*, 816 F.2d 1165, 1171 (7th Cir. 1987)). Although "extreme deprivations are required," *Delaney v. DeTella*, 256 F.3d 679, 683 (7th Cir. 2001), and "routine discomfort[s]" do not suffice, *Hudson v. McMillian*, 503 U.S. 1, 9 (1992), "[s]ome conditions . . . may establish an Eighth Amendment violation in combination when each alone would not do so," and other conditions that may not be sufficiently serious for a short period of time, "can become an Eighth Amendment violation . . . if endured over a significant time," *Gray*, 826 F.3d at 1005 (citations omitted).

Brown's complaints about RCI's bathroom policy arguably rise to the level of an Eighth Amendment claim. He alleges that he complained about the policy and the impact it had on him for nearly eighteen months, while experiencing "numerous" incidents of soiling himself. This is sufficient, at least at the screening stage, to satisfy the objective prong. With respect to the subjective prong, "[d]eliberate indifference . . . means that the official knew that the inmate faced a substantial risk of serious harm, and yet disregarded that risk by failing to take reasonable measures to address it." *Townsend*, 522 F.3d at 773. Establishing that an official acted negligently does not suffice. "Instead, the inmate must show that the official received information from which the inference could be drawn that a substantial risk existed, and that the official actually drew the inference." *Id.* Brown has alleged that Serrano, Kemper, Bones, Wells, Hove, Davidson, and O'Donnell all knew about the issues he was experiencing as a result

5

of the bathroom policy. At screening, this is sufficient to allege that they knew Brown was at a risk of harm and failed to act to address it. He may proceed against them under the Eighth Amendment. He may not proceed against Aldana or Jane/John Doe 1 and Jane/John Doe 2 because they were, by the allegations in the complaint, aware of only one isolated incident and were not aware of his ongoing issues with the single bathroom.

Brown says that he wants to sue the defendants in both their official capacity and their individual capacity. "Personal-capacity suits seek to impose liability upon a governmental official for actions he takes under color of state law . . . . Official capacity suits, in contrast, generally represent only another way of pleading an action against an entity of which an officer is an agent." *Hill v. Shelander*, 924 F.2d 1370, 1372 (7th Cir. 1991) (quoting *Kentucky v. Graham*, 473 U.S. 159, 166 (1985)). However, Brown seeks only monetary relief. (ECF No. 9 at 12.) He is no longer at Racine, so he cannot seek injunctive relief. And for purposes of obtaining damages rather than injunctive relief, "neither a State nor its officials acting in their official capacities are 'persons' under §1983." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). He may therefore proceed against Serrano, Kemper, Bones, Wells, Hove, Davidson, and O'Donnell in their personal capacities only.

### B. Library Access Claims.

Brown also alleges that defendant Jones' order to keep him out of the prison library interfered with his ability to access the courts. There is no "abstract, freestanding right to a law library or legal assistance." *Lewis v. Casey*, 518 U.S. 343, 351 (1996). To state a claim for denial of access to the courts, a plaintiff must demonstrate that his denial of access to the library or other legal assistance "hindered his efforts to pursue a legal claim." *Id.* Brown has alleged that not being able to access the law library resulted in him filing an untimely certiorari petition related to his reclassification. However, the Court will not allow Brown to proceed on this claim.

First, Brown himself says that he was not allowed back in the law library because of Jones' order, which was because pornographic material was found on his account. He does not contest this; he only contests Jones' decision to bar him from the law library. It appears, then, that his lack of access to the law library was a consequence of his own actions. Second, Brown did not have access to the law library for one month—from mid-February to mid-March. He does not explain why it then took him over another month to file his certiorari petition at the end

of April.  This undermines his allegation that it was the month-long bar from the law library that prevented him from timely filing his petition.

### C. Retaliation Claims.

Brown's final set of allegations concern retaliation.  To state a claim under the First Amendment for retaliation, a plaintiff must allege: "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation likely to deter such activity; and (3) the First Amendment activity was at least a motivating factor in the decision to impose the deprivation." *Hawkins v. Mitchell*, 756 F.3d 983, 996 (7th Cir. 2014).  Brown alleges that he filed a petition for certiorari—a lawsuit—related to the bathroom issue in May 2019.  Brown has the right under the First Amendment to file his own truthful grievances and lawsuits, and the Court is satisfied that Brown's allegation that his transfer to another facility that is far more "oppressive" and without work opportunities would satisfy the requirement that the deprivation would be likely to deter future legal activity.  As for the final element—that the activity be a motivating factor—Brown alleges that Carr, Hove, Kemper, Wells, Bones, Konitzer, Pawlak, Wiegand, Giernoth, and "unknown others" had him transferred from Racine to Prairie du Chien.  According to his complaint, though, only Carr and Kemper were served with his state lawsuit.  Through that allegation, the Court can infer that they knew about the petition and, from there, infer (for purposes of screening) that the lawsuit motivated them to have Brown transferred.  What is not clear is how Hove, Wells, Bones, Konitzer, Pawlak, Wiegand, Giernoth, and the "unknown others" would have known about the lawsuit such that it could have been a motivating factor in having him transferred.  The Court will allow Brown to proceed against Carr and Kemper under the First Amendment but not against any of the other listed defendants.

### SCREENING CONCLUSIONS

In sum, the Court is allowing Brown to proceed against defendants Serrano, Kemper, Bones, Wells, Hove, Davidson, and O'Donnell on an Eighth Amendment claim and against Carr and Kemper on a First Amendment claim. The Court dismisses the remaining defendants: Officer Aldana, Jane/John Doe 1, Jane/John Doe 2, Officer Jones, Teresa Wiegan, Gerald Konitzer, Kristen Pawlak, Michael Giernoth, C. Morrison, L. Krachey, and R. Skime, K. Merbach, and Mandy Mathson.

Brown also sued the Wisconsin Department of Corrections and Racine Correctional Institution.  But "states and their agencies are not 'persons' subject to suit under 42 U.S.C.

7

§1983." *Johnson v. Supreme Court of Ill.*, 165 F.3d 1140, 1141 (7th Cir. 1999). This means that "[n]either the State of Wisconsin nor the State's Department of Corrections is a proper defendant." *Andreola v. Wisconsin*, 171 F. App'x 514, 515 (7th Cir. 2006). The Court will dismiss both the DOC and Racine since they are not proper defendants.

## MOTION FOR EMERGENCY INJUNCTION

Brown filed a motion asking the Court to issue an injunction prohibiting officials at Prairie du Chien from denying him adequate access to the institution's library facilities. (ECF No. 12.) A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Res. Def. Council*, 555 U.S. 7, 22 (2008) (citing *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam)). A preliminary injunction is appropriate only if it seeks relief of the same character sought in the underlying complaint and deals with a matter presented in that underlying complaint. *Kaimowitz v. Orlando, Fla.*, 122 F.3d 41, 43 (11th Cir. 1997) (citations omitted)); *see Peace v. Pollard*, Case No. 15-cv-481, 2017 WL 564016 at *1 (E.D. Wis. Feb. 10, 2017) (citations omitted).

The Court will deny Brown's motion because it does not deal with a matter presented in his complaint. Though Brown does make allegations about the law library in his complaint, the Court did not allow him to proceed on that claim. But even if it had, Brown's allegations concern his lack of access to the law library at Racine during a specific period of time. There are no allegations in his complaint about access to the Prairie du Chien law library. His motion for injunctive relief is outside the scope of this lawsuit. The Court denies it.

The Court also notes that there is nothing for Brown to do in this lawsuit right now. The complaint and this order will be transmitted to the defendants for service, at which point they will have 60 days to answer. Brown has no imminent need in this case to access the law library. Furthermore, even when preparing or responding to motions, including a motion for summary judgment, Brown's need to access the law library will be limited. *See Boyd v. Gonzalez, et al.*, 18-C-1006, ECF No. 70 (E.D. Wis. Dec. 19, 2019) ("The court is familiar with the law and does not require [Brown] to explain the legal basis of his claim so much as to indicate which facts asserted by the defendants are in dispute.").

## CONCLUSION

**THEREFORE, IT IS ORDERED** that Brown's motion for leave to proceed without prepaying the filing fee (ECF No. 2) is **GRANTED**.

8

**IT IS FURTHER ORDERED** that Brown's motion for emergency injunctive relief (ECF No. 12) is **DENIED**.

**IT IS FURTHER ORDERED** that defendants Officer Aldana, Jane/John Doe 1, Jane/John Doe 2, Officer Jones, Teresa Wiegan, Gerald Konitzer, Kristen Pawlak, Michael Giernoth, C. Morrison, L. Krachey, and R. Skime, K. Merbach, Mandy Mathson, the Wisconsin Department of Corrections, and Racine Correctional Institution are **DISMISSED**.

Under an informal service agreement between the Wisconsin Department of Justice and this court, a copy of the complaint and this order have been electronically transmitted to the Wisconsin Department of Justice for service on defendants Officer Serrano, Kevin Carr, Paul Kemper, Michelle Bones, Jason Wells, Stephanie Hove, Emily Davidson, and C. O'Donnell. It is **ORDERED** that, under the informal service agreement, those defendants shall file a responsive pleading to the complaint within 60 days.

**IT IS FURTHER ORDERED** that the agency having custody of Brown shall collect from his institution trust account the $317.95 balance of the filing fee by collecting monthly payments from Brown's prison trust account in an amount equal to 20% of the preceding month's income credited to Brown's trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The payments shall be clearly identified by the case name and number assigned to this case. If Brown is transferred to another county, state, or federal institution, the transferring institution shall forward a copy of this order along with his remaining balance to the receiving institution.

**IT IS FURTHER ORDERED** that a copy of this order be sent to the officer in charge of the agency where Brown is confined.

**IT IS FURTHER ORDERED** that the parties may not begin discovery until after the court enters a scheduling order setting deadlines for discovery and dispositive motions.

**IT IS FURTHER ORDERED** that plaintiffs who are inmates at Prisoner E-Filing Program institutions[2] must submit all correspondence and case filings to institution staff, who

---

[2] The Prisoner E-Filing Program is mandatory for all inmates of Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution.

9

will scan and e-mail documents to the court. Plaintiffs who are inmates at all other prison facilities must submit the original document for each filing to the court to the following address:

>Office of the Clerk
>United States District Court
>Eastern District of Wisconsin
>362 United States Courthouse
>517 E. Wisconsin Avenue
>Milwaukee, Wisconsin 53202

PLEASE DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the matter.

Brown is further advised that failure to make a timely submission may result in the dismissal of this case for failure to diligently pursue it. In addition, the parties must notify the Clerk of Court of any change of address. Brown is reminded that it is his responsibility to promptly notify the court if he is released from custody or transferred to a different institution. Brown's failure to keep the court advised of his whereabouts may result in the dismissal of this case without further notice.

Enclosed is a guide prepared by court staff to address common questions that arise in cases filed by prisoners. Entitled "Answers to Prisoner Litigants' Common Questions," this guide contains information that Brown may find useful in prosecuting his case.

Dated at Milwaukee, Wisconsin this 26th day of October, 2020.

>s/ Brett H. Ludwig
>
>Brett H. Ludwig
>United States District Judge