UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

CALVIN LEE BROWN,

        Plaintiff,

    v.                                                      Case No. 20-cv-206-bhl

KEVIN CARR, *et al.*,

        Defendants.

---

## DECISION AND ORDER

Plaintiff Calvin Lee Brown, who is representing himself, alleges that: (1) defendants Paul Kemper, Ted Serrano, Jason Wells, and Stephanie Hove violated his Eighth Amendment rights when they failed to address an "inhumane" bathroom policy at the Racine Correctional Institution (RCI); and (2) defendants Kemper and Kevin Carr violated his First Amendment rights when they transferred him to Prairie du Chien Correctional Institution (PDCI) in retaliation for inmate complaints he filed regarding the inhumane bathroom policy at RCI. Dkt. No. 13 at 5-7. On July 13, 2021, the defendants filed a motion for summary judgment, Dkt. No. 47, which is now fully briefed and ready for resolution. Dkt. Nos. 48, 71 & 74. For the reasons explained below, the Court will grant the motion and dismiss this case.

## FACTUAL BACKGROUND

At the relevant times, Brown was an inmate at RCI who later transferred to PDCI. Dkt. No. 49, ¶1. Defendants are Department of Corrections (DOC) Assistant Administrator Stephanie Hove, RCI Warden Paul Kemper, RCI Deputy Warden Jason Wells, and RCI Lieutenant Ted Serrano. *Id*.

On December 12, 2017, Brown reported to work in the education building at RCI at 8:00 a.m. Dkt. No. 73, ¶4; *see also* Dkt. No. 73-1 at 1. He asked to use the toilet because the ones on his unit were flooded, but a correctional officer told him "no" because the building policy was that inmates could not use the toilet until 8:30 a.m. Dkt. No. 73-1 at 1. As a result of this policy, Brown soiled himself that day, and his employer had to write an email to Education Director Dr. Paula Decker (not a defendant) explaining that the bathroom policy did not make any sense given that inmates had to report to work in the education building at 8:00 a.m. *Id.* According to the defendants, Dr. Decker was the individual who had authority to make policy decisions related the education building. Dkt. No. 49, ¶7.

About six months later, on June 20, 2018, Brown wrote a letter to Serrano explaining that the bathroom policy in the education building was inhumane and caused him to soil himself (again) on June 15, 2018 and June 16, 2018. Dkt. No. 73, ¶5. According to this letter, Brown complained that having to wait and use a key to use the bathroom was inhumane. Dkt. No. 73-1 at 3. Serrano states that he does not recall the letter, but that he had no ability to change policies related to the bathrooms in the education building on his own. Dkt. No. 49, ¶3. The June 20 letter was forwarded to Deputy Warden Johnson (not a defendant), Unit Manager Weigand (not a defendant), and Wells. Dkt. No. 51-1. Wells then investigated the situation and discovered that correctional staff had not improperly denied Brown the ability to use the bathroom on June 15, 2018 and June 16, 2018—the bathroom had been out of service on June 15 and another inmate was using the bathroom at the time Brown needed it on June 16. Dkt. No. 49, ¶2. Wells wrote back to Brown on July 9, 2018 explaining the circumstances of the June 15 and June 16 incident and reminding him that he could use "sick cell" or "lay in" if he had incontinence issues that made it inadvisable for him to be that far from his unit. *Id.*, ¶4.

Brown then wrote to Wells directly about the alleged bathroom policy two more times: on July 13, 2018 and September 28, 2018. Dkt. No. 73-1 at 4-6. In these letters, Brown asserted that the bathroom policy was inhumane because 100-250 inmates had access to only one bathroom with one toilet in the entire education building. *Id.* By contrast, there were eleven bathrooms for staff use in the education building and there were fewer staff members in the building. *Id.*; *see also* Dkt. No. 73, ¶13. Wells contends he did not receive these letters from Brown. Dkt. No. 49, ¶5.

On November 8, 2018, Brown wrote a letter to Kemper (with a copy to Wells) asserting that the bathroom policy in the education building was inhumane and causing him to soil himself regularly. Dkt. No. 73, ¶¶6-7. Brown again noted the issue with use of the key and complained that there was only one bathroom with one toilet available for all inmates in the education building. Dkt. No. 73-1 at 7-8. Brown further explained that other inmates, especially those with medical issues, were also struggling with the policy. *Id*.

Kemper forwarded the November 8 letter to Dr. Decker. Dkt. No. 49, ¶6. Within a week, Dr. Decker spoke to Lieutenant Giza (not a defendant), adjusted bathroom hours to better accommodate inmates, responded to Brown explaining the new hours, and distributed memoranda to both educational staff and correctional staff explaining the new hours. *Id*., ¶8. According to the memoranda distributed to staff on November 15, 2018, the new bathroom policy was as follows:

    7:50 a.m. Inmate Bathroom opens
    11:20 a.m. Inmate Bathrooms closed
    12:45 p.m. Inmate Bathroom reopens
    4:20 p.m. Inmate Bathroom closed
    5:45 p.m. Inmate Bathroom reopens
    8:20 p.m. Inmate Bathroom closed

Dkt. No. 52-5 at 2.  The memoranda further stated, "[i]f an inmate has a medical-related urgency, please use common sense and allow use of any available inmate bathroom in the program building including the bathroom near the MCS desk.  Extra MCS rounds around the inmate bathroom area are encouraged to monitor and address misuse of the bathroom."  *Id*.  Wells was made aware of these changes and later decided to create an extra bathroom for inmates in the education building.  Dkt. No. 49, ¶¶9-10.

Brown states that he also had another incident where he soiled himself on December 14, 2018.  Dkt. No. 71 at 1.  Brown left his job at the library that day to use the bathroom but found that a key was broken off in the lock.  Dkt. No. 9 at 8.  When he reported the problem to the desk officer, the officer told him to do the best he could.  *Id.* at 8–9.  Brown did not make it back to his cell before soiling himself.  *Id.* at 9.

While the bathroom policy was being sorted out through these letters and the Inmate Complaint Review System, Brown also had two reclassification hearings related to the crime for which he was incarcerated.  Dkt. No. 73, ¶14.  On May 31, 2018, the Classification Committee recommended placing Brown at a "northern facility" with a "minimum" custody level.  *Id*.  Five months later, on October 18, 2018, the Classification Committee recommended keeping Brown at RCI with a "medium" custody level.  *Id*.  Classification Sector Chief Gerald Konitzer (not a defendant) overruled both recommendations in part and decided to transfer Brown to PDCI with his desired reduction to "minimum" custody status.  Dkt. No. 49, ¶¶15-16.  Chief Konitzer explains that he decided to transfer Brown to PDCI because he was a low risk overall, but his refusal to admit culpability for the crime of human trafficking made it inadvisable to house him at a minimum security facility where there was no perimeter fence.  *Id*., ¶17.  Chief Konitzer states that was not

4

aware of any inmate complaints Brown filed about the bathroom policy at the time he made the decision. *Id.*, ¶18.

Hove had no involvement with any bathroom policies at RCI and Brown admits that he "never directly asked Hove to take any action regarding the bathroom issue." Dkt. No. 49, ¶¶12-13; *see also* Dkt. No. 72, ¶¶12-13. Likewise, neither Carr nor Kemper had any involvement in Brown's reclassification or transfer from RCI to PDCI. Dkt. No. 49, ¶14. Brown admits that "there may be a high probability that Secretary Carr was not involved in my reclassification," *see* Dkt. No. 72, ¶15, and he states, "I cannot definitively say Mr. Kemper…did not collaborate before I was transferred to PDCI," *see* Dkt. No. 72, ¶¶15-16.

## SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Ames v. Home Depot U.S.A., Inc.*, 629 F.3d 665, 668 (7th Cir. 2011). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *Anderson*, 477 U.S. at 248. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The party asserting that a fact is genuinely disputed must support the assertion by:

(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

(B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

## ANALYSIS

Defendants assert that they are entitled to summary judgment because Brown is no longer incarcerated at RCI; therefore, he cannot challenge the RCI bathroom policy itself. Dkt. No. 48 at 3. They further contend that none of the defendants in this case were personally involved in applying the bathroom policy to Brown on December 12, 2017, June 15, 2018, June 16, 2018, or December 14, 2018 or in making the decision to transfer Brown to PDCI. *Id*. at 3-6.

Section 1983 limits liability to individuals who are personally responsible for a constitutional violation. *Burks v. Raemisch*, 555 F.3d 592, 593-94 (7th Cir. 2009). "An official satisfies the personal responsibility requirement of Section 1983. . . if the conduct causing the constitutional deprivation occurs at [his] direction or with [his] knowledge and consent." *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995) (quoting *Crowder v. Lash*, 687 F.2d 996, 1005 (7th Cir. 1982)). He or she "must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye." *Id*. (quoting *Jones v. City of Chicago*, 856 F.2d 985, 992 (7th Cir. 1988)).

The undisputed evidence shows that Hove and Carr were not personally involved in any aspect of this case. *See* Dkt. No. 49, ¶¶12-14. Indeed, Brown has put forth no evidence showing that Hove had any involvement in creating or amending the bathroom policy at RCI or that Carr had any involvement in the decision to transfer him to PDCI. Brown states that both of these individuals allegedly knew about his troubles because certain letters he wrote were forwarded to them as "supervisors." *See* Dkt. No. 72, ¶¶13-15. Under §1983, a supervisor's liability depends on his own knowledge and actions, not those of his subordinates. *See Burks*, 555 F.3d at 594. Supervisors are, therefore, entitled to delegate duties to those they supervise without exposing

6

themselves to vicarious liability. *See id.* at 595. For example, "a non-medical prison official . . . cannot be held 'deliberately indifferent simply because he failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor.'" *Johnson v. Doughty*, 433 F.3d 1001, 1012 (7th Cir. 2006) (quoting *Durmer v. O'Carroll*, 991 F.2d 64, 69 (3d Cir. 1993)). Similarly, a supervisor is not liable for failing to respond to an inmate's complaints when those complaints were already before the complaint examiner. *See Burks*, 555 F.3d at 595. Thus, the fact that Hove and Carr knew about Brown's troubles does not, without something more, establish liability. Because Brown lacks evidence indicative of "something more," Hove and Carr are entitled to summary judgment.

The undisputed evidence further shows that Kemper was also not personally involved in the decision to transfer Brown to PDCI. Dkt. No. 49, ¶14. Chief Konitzer made that decision without any knowledge about Brown's grievances about the bathroom policy. *Id.*, ¶¶15-18. Brown alleges that he cannot be sure that Kemper "did not collaborate [with Konitzer] before [Brown] was transferred to PDCI," *see* Dkt. No. 72, ¶15, but this is mere speculation, which does not suffice to survive summary judgment. *Devbrow v. Gallegos*, 735 F.3d 584, 588 (7th Cir. 2013) ("[S]peculation concerning retaliatory motives cannot create a genuine issue of material fact."). Brown further states that he believes Chief Konitzer did know about his inmate complaints regarding the bathroom policy. *See* Dkt. No. 72, ¶18. But Chief Konitzer is not a defendant in this case, and even if he was, Brown presents nothing more than speculation that all prison officials at RCI knew about his inmate complaints. He cannot create a genuine dispute of material fact simply by claiming that his adversaries are lying. "[W]hen challenges to witness' credibility are *all* that a plaintiff relies on . . . summary judgment in favor of the defendant is proper." *Springer*

*v. Durflinger*, 518 F.3d 479, 484 (7th Cir. 2008) (citation omitted). Therefore, Kemper is also entitled to summary judgment with respect to the First Amendment retaliation claim.

That leaves Brown's Eighth Amendment conditions-of-confinement claim against Kemper, Wells, and Serrano regarding the "inhumane" bathroom policy at RCI. Brown alleges that the bathroom policy was itself unconstitutional and he also alleges that the bathroom policy as applied to him on November 8, 2018, June 15, 2018, June 16, 2018, and December 14, 2018 was unconstitutional. Dkt. No. 71.

To survive summary judgment on an Eighth Amendment conditions-of-confinement claim, Brown must put forth evidence from which a reasonable jury could find that: (1) the conditions were so adverse that they deprived him "of the minimal civilized measure of life's necessities;" and (2) the defendants acted with deliberate indifference with respect to the conditions. *Townsend v. Fuchs*, 522 F.3d 765, 773 (7th Cir. 2008) (citing *Farmer v. Brennan*, 511 U.S. 832, 834 (1994)). The necessities of life include "reasonably adequate ventilation, sanitation, bedding, hygienic materials, and utilities." *Gray v. Hardy*, 826 F.3d 1000, 1005 (7th Cir. 2016) (citing *Lewis v. Lane*, 816 F.2d 1165, 1171 (7th Cir. 1987)). But "extreme deprivations" are required to prevail on a claim. *Delaney v. DeTella*, 256 F.3d 679, 683 (7th Cir. 2001). "Routine discomfort[s]" do not suffice. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). "Deliberate indifference…means that the official knew that the inmate faced a substantial risk of serious harm, and yet disregarded that risk by failing to take reasonable measures to address it." *Townsend*, 522 F.3d at 773. "[T]he inmate must show that the official received information from which the inference could be drawn that a substantial risk existed, and that the official actually drew the inference." *Id*.

8

Case 2:20-cv-00206-BHL   Filed 06/28/22   Page 8 of 12   Document 75

As a preliminary matter, Brown seeks only monetary damages in this lawsuit. *See* Dkt. No. 9 at 12. Thus, although Brown asserts throughout his briefing materials that RCI's former bathroom policy was unconstitutional in itself, he was not allowed to proceed with that claim. *See* Dkt. No. 13 at 5-6 (noting that "[Brown] is no longer at Racine, so he cannot seek injunctive relief."). It is also unclear what the former bathroom policy even was. Brown notes in parts of his briefing materials that the bathroom was not open until 8:30 a.m. even though inmates have to report to work at 8:00. "Temporary lack of toilet access is not cruel and unusual punishment." *Harris v. Jones*, No. 20-1625, 2021 WL 4950248, at *2 (7th Cir. Oct. 25, 2021) (quoting *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001)). In *Harris*, the Seventh Circuit affirmed a district court's decision denying an inmate's conditions-of-confinement claim where the inmate was denied toilet access for 40 minutes—10 minutes *longer* than what Brown alleges here. *Id.* at *2. In other parts of his briefing materials, Brown notes that the bathroom was not available without a key. But that too was not unreasonable if there was only one toilet in the bathroom, as Brown reports. And Brown notes that there was only one bathroom available in the entire education building used by 100+ inmates per day, but if most inmates are only in the education building sporadically to take a class or use the library, *see* Dkt. No. 71-1 at 39 (showing that there were, at most, only 29 full-time inmates in the building each day), having one inmate bathroom for the whole building was not an extreme deprivation. In short, even if Brown was proceeding with a claim challenging the policy itself, none of the circumstances he identifies amount to an "extreme deprivation" under the Eighth Amendment.

Instead, the main issue in this lawsuit is that specific individuals denied Brown use of the bathroom on December 12, 2017, June 15, 2018, June 16, 2018, and December 14, 2018 using different justifications on different days. The undisputed facts show, however, that Kemper,

9

Wells, and Serrano were not personally involved in any of those incidents. Indeed, Brown states that he only notified Kemper, Wells, and Serrano about these incidents *after* they had already occurred, and prison officials are not liable under §1983 for completed acts of harm. *George v. Smith*, 507 F.3d 605, 609-10 (7th Cir. 2007).

Brown further states that all three defendants were aware of his complaints and failed to take corrective action. He insists Serrano knew about the problems he was facing with the bathrooms since June 2018; that Wells knew about the problems since July 2018; and Kemper knew about the problems since November 2018. He argues that they should have done more to help him with his troubles. Brown's argument fails for two reasons. First, Brown does not articulate what exactly he thinks each defendant should have done. As noted above, Brown has never clearly articulated a consistent bathroom policy that he believes violated his rights. Instead, he argues that different people denied him use of the bathroom using different justifications on different days. As a practical matter, neither Serrano, Wells, nor Kemper could have taken prophylactic measures to resolve his problems because none of them had any basis to anticipate the issues that later arose with different correctional officers. Brown states that the defendants could have simply allowed use of one of the eleven staff bathrooms available in the building, *see* Dkt. No. 72, ¶11, but the Court must give prison officials deference in matters involving prison administration. *O'Lone v. Est. of Shabazz*, 482 U.S. 342, 349–50 (1987). Indeed, the memoranda distributed in November 2018 specifically noted that "misuse of the bathroom," along with conducting "rounds around the inmate bathroom" limited bathroom availability. These are legitimate penological concerns that this Court cannot override or second guess.

Second, and in any event, the record confirms that Serrano, Wells, and Kemper each responded reasonably and appropriately to Brown's letters. Serrano forwarded the June 2018 letter

10

to supervisors (the Unit Manager and the Deputy Warden), who had the authority to address the issue. Serrano has provided a sworn statement confirming that he did not have the authority to resolve the issue on his own, and Brown has no credible evidence to the contrary apart from his own speculation that Serrano could have unilaterally created an exception allowing him to use a different staff bathroom in the building. Similarly, the record shows that Wells investigated the incidents brought to his attention and concluded that nobody denied Brown use of the bathroom for an improper reason—the bathroom simply was not available at the time he wanted to use it. And Kemper, once notified of the issue, coordinated with the appropriate individuals, and affirmatively changed the bathroom hours within a week. Based on this record, no reasonable jury could conclude that Serrano, Wells, and Kemper were deliberately indifferent towards Brown's conditions of confinement. To the contrary, they took reasonable measures to address his concerns. Accordingly, the Court will grant the defendants' motion for summary judgment and dismiss this case.

## CONCLUSION

**IT IS THEREFORE ORDERED** that the defendants' motion for summary judgment (Dkt. No. 47) is **GRANTED** and this case is **DISMISSED**. The Clerk's office shall enter judgment accordingly.

Dated at Milwaukee, Wisconsin on June 28, 2022.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge

This order and the judgment to follow are final. Plaintiff may appeal this Court's decision to the Court of Appeals for the Seventh Circuit by filing in this Court a notice of appeal within **30 days** of the entry of judgment. *See* Fed. R. App. P. 3, 4. This Court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Fed. R. App. P. 4(a)(5)(A). If Plaintiff appeals, he will be liable for the $505.00 appellate filing fee regardless of the appeal's outcome. If Plaintiff seeks leave to proceed *in forma pauperis* on appeal, he must file a motion for leave to proceed *in forma pauperis* with this Court. *See* Fed. R. App. P. 24(a)(1). Plaintiff may be assessed another "strike" by the Court of Appeals if his appeal is found to be non-meritorious. *See* 28 U.S.C. §1915(g). If Plaintiff accumulates three strikes, he will not be able to file an action in federal court (except as a petition for habeas corpus relief) without prepaying the filing fee unless he demonstrates that he is in imminent danger of serous physical injury. *Id.*

Under certain circumstances, a party may ask this Court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of judgment. The Court cannot extend these deadlines. *See* Fed. R. Civ. P. 6(b)(2).

A party is expected to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.